IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| SONIDE SIMON for herself and as representative of the estate of Jeffson Romain and the minor I.R.; the estate of Jeffson Romain; the minor I.R.<br><br>**Plaintiffs,**<br><br>v.<br><br>CARIBBEAN BREEZE ADVENTURES LLC; JOHN AND JANE DOES; INSURANCE COMPANIES A,B,C<br><br>**Defendants** | Civil No. 24cv1177<br><br>Wrongful death; Torts; Diversity; Jury Trial Demanded |

**COMPLAINT**

**TO THE HONORABLE COURT:**

**COMES NOW** Plaintiffs, Sonide Simon for herself and as representative of the estate of Jeffson Romain and the minor I.R.; the estate of Jeffson Romain (R.I.P.); the minor I.R., by and through the undersigned counsel, respectfully states, alleges, and prays as follow:

**I. JURISDICTION AND VENUE**

**1.** This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C § 1332 as the amount in controversy exceeds

$75,000, exclusive of interests and costs, and plaintiffs and the defendants are citizens of different states.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a). All events related to the accident and injuries described herein took place within this district.

## II. THE PARTIES

3. At all relevant times herein, Plaintiff, Sonide Simon, is the widow of Jeffson Romain, the representative of the estate of Mr. Romain and the mother of the minor I.R., also plaintiff in this case. At all relevant times, Ms. Simon and the minor I.R. were and still are citizens of the State of Florida.

4. Defendant Caribbean Breeze Adventures LLC is a legal entity created and existing under the laws of the State of the Commonwealth of Puerto Rico to do business in this District, and has its principal place of business in this District, to wit, ownership and operation of a tour company located at Rio Grande, Puerto Rico.

5. Upon information and belief, John and Jane Doe Defendants are individuals, corporations, and other entities whose names and addresses are unknown to Plaintiffs at this time, and who caused or contributed to the injuries and damages to the Plaintiff, but whose true identity and/or liability have not been ascertained at this time. Further, the fictitiously named Defendants, include, but may not be limited to, those that may have an ownership

interest in the tour business and/or manage the business and/or had a duty to eliminate dangers to tour participants, such as those causing the injuries herein. All allegations and claims asserted herein against any Defendants are incorporated herein by reference against John and Jane Does. Said John and Jane Does, when their true identities are known and their liability ascertained, will be identified by name, and joined in this action, if necessary. Any such amended complaint will relate back to the filing of this Complaint under the applicable rules of procedure.

6. Upon information and belief, fictitiously named Defendants, Insurance Companies A, B, and C were and still are insurance companies doing business under the laws of the Commonwealth of Puerto Rico, who had issued and maintained in full force and effect, at the time of the injuries and damages alleged herein, polices of insurance issued to all Defendants, covering all risk for injuries and accidents as a result of their negligence.

### III. FACTUAL ALLEGATIONS

7. At all times mentioned, defendant, Caribbean Breeze Adventures LLC (hereafter "Caribbean") operated a tour guide company dedicated to providing tours to tourists in Puerto Rico.

8. One of the tours offered by Caribbean is called "El Yunque Rainforest, Waterslide, Beach, Dine, and Shop" which they describe as the "Casual One". The tour starts with a walk trhough the El

Yunque rainforest. Then Caribbean takes the tour participants to a river known as "Las Paylas" on the skirts of the rainforest.

9. According the Carribbean's website "[u]pon arrival at Las Paylas [tour participants] will embark on a nature walk through the scenic terrain of El Yunque. At trail's end, you'll be introduced to a natural playground with something for everyone! With a hidden waterfall, cave, 2 waterslides, and natural pool, there is no more refreshing or exhilarating way to enjoy an afternoon!".[1]

10. In November 2023, Sonide Simon was enjoying her vacation in Puerto Rico with her husband, Jeffson Romain ("Mr. Romain"), and her daughter, the minor I.R.

11. On November 16, 2023, Ms. Simone booked the "Casual One" tour offered by Caribbean through the Viator online tour-booking platform for Saturday, November 18, 2023 at 10:30 AM.

12. In the morning of November 18, 2023, plaintiffs were picked up from their hotel in San Juan by a tour guide who introduced himself as David and traveled to the El Yunque tour area in a bus.

13. Upon arrival at Las Paylas, David, the Caribbean tour guide, mentioned that there were life vests on the bus but that they were not required or necessary because the river was calm.

---

[1] See https://caribbeanbreezeadventures.com/casual-one/ visited on April 11, 2024.

14. Because Mr. Romain was an experienced and strong swimmer and because David had informed that the life vests were not necessary, he chose not to wear one for the Las Paylas portion of the tour.

15. David informed guests that there were two waterfalls to visit. One with a long natural water slide and a shorter one. Plaintiffs and Mr. Romain made it through the trees to the area of the long slide. Mr. Romain participated in the long slide activity a few times, as Mrs. Simon and their daughter watched from the water pool.

16. The tour guide then took all participants trough the forest to get to the smaller waterfall. At the smaller waterfall, the minor I.R. and Ms. Simon went on the small slide while Mr. Romain recorded them. They all then proceeded to the pool of water at the end of the waterfall area.

17. Mr. Romain was in the water to the right of Ms. Simon. Given the strength of the river current, they asked their daughter, the minor I.R., to go play nearby near the rocks where the water was shallower.

18. While Ms. Simon was chatting with another tour participant in the water, she realized that Mr. Romain was no longer near her. She started to yell for help. Two fellow tour participants jumped in the water to help her search for Mr. Romain and asked David to

assist. David was at the slide with other patrons, so it took him some time to come and join the search.

19. One of the tour participants stated that he felt Mr. Romain grab on to him as he was being pulled under water. Ms. Simon frantically asked David and the other tour participants helping with the search to look on the spot where the gentleman had reported being pulled by Mr. Romain, but they continued to look elsewhere.

20. Police and a search and rescue team eventually joined the search. After an hour, Ms. Simon was asked to wait outside of the forest. After searching for nearly four hours, they finally found Mr. Romain in the area where she insisted he was. They brought his body out and laid it on the grass. Ms. Simon saw his bracelets and knew it was him. The rescuers confirmed that he had drowned in the river.

21. Mr. Romain was born in Port au Prince, Haiti on April 20, 1979, and grew up in Jeremie, Haiti, after being orphaned at an early age. Jeremie is a coastal town in the southwestern portion of the county where Mr. Romain grew up swimming as a part of his daily life activities and Boy Scout training. Mr. Romain was fit, in good health and was an avid swimmer.

22. Defendant, in arranging and conducting the tour, owed a duty of care to its clients, including plaintiff, her husband, and daughter, to ensure their safety during the tour.

23. Despite this duty of care, Defendant breached its duty by:
    a. Failing to provide adequate training to the tourists regarding the dangers of the river currents and the appropriate safety measures to take;
    b. Neglecting to provide life vests or other flotation devices to the tourists;
    c. Failing to asks that all tour participants wear a life vest if they chose to go in the water at Las Paylas;
    d. Failing to employ a lifeguard to monitor the safety of the tourists while engaging in water activities;
    e. Employing only one tour guide, who was unable to adequately supervise the large number of tour participants present;
    f. Neglecting to warn the tourists about the hazards and dangers associated with swimming and rafting in the river, including the strong currents.
24. As a result of Defendant's negligence, Mr. Romain was pulled underwater by the strong currents of the river and drowned.

## Count I: Negligence

25. All of the preceding paragraphs are incorporated by reference as if fully set forth herein.
26. Defendant has a non-delegable duty to ensure the safety of tour participants.

27. Upon information and belief, the dangerous condition of the strong river currents was known by Defendant.

28. Defendant owed a duty of care to all tour participants to exercise reasonable care in arranging and conducting the river tour. Defendant breached this duty by failing to take appropriate safety measures, as outlined above. This breach of duty was the direct and proximate cause of Mr. Romain's untimely death.

29. At all times herein mentioned, Plaintiffs were the wife and daughter of decedent, Mr. Romain, and sole heirs. As such, they had reasonable expectancy of support and future benefits from Mr. Romain.

30. As a direct and proximate result of the negligence and grossly negligent acts and omissions of defendants, Plaintiffs have suffered damages, including, without limitation, emotional distress, mental suffering, and the loss of Mr. Romain's love and affection.

31. As a direct and proximate result of the negligence, carelessness, recklessness, wantonness, and unlawfulness of Defendants, and each of them, and the resulting death, as aforesaid, Plaintiffs have sustained severe and serious injury to their persons, all to Plaintiffs' damage in a sum within the jurisdiction of this court and to be shown according to proof.

32. As a direct and proximate result of the conduct of the Martinez and Doe defendants, and each of them, and the death of

Mr. Romain, Plaintiffs have been deprived of the society and comfort of said decedent and have been caused the loss of future services, earnings, and protection, to their great loss and damage, in an amount to be shown according to proof.

33. As a direct and proximate result of the conduct of Defendants, and each of them, and the resulting death as aforesaid, plaintiffs have been compelled to incur expenses, as well as other special damages, all to the damage of these plaintiffs, in an amount to be shown according to proof.

34. As a direct and proximate result of the negligence and grossly negligent acts and omissions of Defendants, Plaintiffs have lost their husband and father, who would have economically and emotionally supported them in the future.

35. For such injuries proximately resulting from Defendants negligent acts and omissions, they are liable to Plaintiffs for compensatory damages in an amount of $5,000,000.00, which amount shall be proven at trial.

### Count II: Survival Action

36. All of the preceding paragraphs are incorporated by reference as if fully set forth herein.

37. On or about November 18, 2024, Mr. Romain died after a cause of action arose in his favor after he was pulled underwater by the river current and drowned. Mr. Romain would have been the plaintiff in this action if he had lived.

**38.** As Mr. Romain only heirs, Plaintiffs they are entitled to recover damages for the injuries, pain and suffering of Mr. Romain before his death, all of which were caused by the negligent acts of Defendants.

**39.** For such injuries proximately resulting from Defendants negligent acts and omissions, they are liable to Plaintiffs for compensatory damages in an amount of $1,000,000.00, which amount shall be proven at trial.

### Count III: Punitive Damages

**40.** All of the preceding paragraphs are incorporated by reference as if fully set forth herein.

**41.** Pursuant to Article 1538 of the Civil Code, when the negligent act or omission that proximately causes injuries to a third party is a crime, a reckless act or is done with wanton disregard of the life and safety of others, the injured party shall be entitled to punitive damages. See PR Laws Ann 31 § 10803.

**42.** Defendants' reckless acts and omissions, as well as the wanton disregard to the safety of others, where the proximate cause of the death of Mr. Romain. Therefore, the Plaintiffs are entitled to punitive in an amount sufficient to punish Defendant and deter similar conduct in the future.

### JURY TRIAL DEMANDED

**43.** Plaintiff hereby demands a trial by jury.

**WHEREFORE**, Plaintiff demands that judgment in the amount of $6,000,000.00 be entered against defendants for all damages claimed herein, plus punitive damages, interest, costs, attorneys' fees, and any other remedy to which she may be entitled under law or equity.

**RESPECTFULLY SUBMITTED**, in San Juan, Puerto Rico, on April 16, 2024.

<u>s/ Alberto J. Castañer-Padró</u>
Alberto J. Castañer-Padró
USDC 225706
**Castañer & Baella LLC**
MAI Center
Marginal Kennedy
771 Calle 1, Ste 204
San Juan PR 00920
Fax 1 888 227 5728
Tel 787 707 0802
<u>alberto@castanerlaw.com</u>